UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

THE UNITED STATES OF AMERICA,
THE STATE OF FLORIDA, and JAEL
CANCEL,

Plaintiffs,

v.

Case No: 6:14-cv-512-Orl-28TBS

CENTRAL MEDICAL SYSTEMS, LLC,
ALAN T. HARLEY, JOAN HARLEY,
ARTHUR WRIGHT, and MEDDEX
SOLUTIONS, LLC,

Defendants.

## ORDER

Relator Jael Cancel filed this False Claims Act action against Central Medical Systems, LLC (CMSI)[1] and Alan T. Harley (Mr. Harley) in 2014. (Qui Tam Compl., Doc. 1). Electing to intervene, the United States filed a four-count Complaint in Intervention (Doc. 39) against CMSI and Mr. Harley in March 2018. And in August 2018, the United States filed its seven-count Amended Complaint in Intervention (Doc. 66), adding claims against Joan Harley (Mrs. Harley), Arthur Wright, and Meddex Solutions, LLC (Meddex).

Mrs. Harley now moves to dismiss the claims against her. (Mot., Doc. 83). Having considered the motion, the Response (Doc. 95) filed by the United States, and governing law, the Court grants in part and denies in part Mrs. Harley's motion.

---

[1] As noted in the Amended Complaint, "Central Medical Systems, LLC previously operated as Central Medical Systems, Inc. and is commonly referred to by its owner, employees, and affiliates as CMSI." (Doc. 66 at 1 n.1).

I.  **Legal Standards**

"Generally, federal civil complaints need only state 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" United States ex rel. Clausen v. Lab. Corp. of Am., Inc., 290 F.3d 1301, 1308 (11th Cir. 2002) (quoting Fed. R. Civ. P. 8(a)). "'[D]etailed factual allegations'" are not required, but "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)). "To survive a [Rule 12(b)(6)] motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570).

One caveat to Rule 8's "short and plain statement" standard is Rule 9(b)'s requirement that "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." Fed. R. Civ. P. 9(b). "[T]he False Claims Act is 'a fraud statute' for the purposes of Rule 9(b)." Clausen, 290 F.3d at 1309–10 (quoting district court decision). "To state a claim under the False Claims Act with particularity, the complaint must allege 'facts as to time, place, and substance of the defendant's alleged fraud, [and] the details of the defendants' allegedly fraudulent acts, when they occurred, and who engaged in them.'" Corsello v. Lincare, Inc., 428 F.3d 1008, 1012 (11th Cir. 2005) (alteration in original) (further internal quotation marks omitted) (quoting Clausen, 290 F.3d at 1310).

## II. Background[2]

CMSI and Meddex are limited liability corporations that "provide[] surgical dressings, durable medical equipment (DME), or other Medicare reimbursable items to patients." (Doc. 66 ¶ 11; see also id. ¶ 15). CMSI is owned and operated by Mr. Harley, its managing member. (Id. ¶ 12; id. at 1). Meddex was previously owned by Mr. Harley and his wife, Mrs. Harley, but it is now owned and operated by Mr. Wright. (Id. at 1, 2).

Mr. Harley has been operating CMSI since May 2008. (Id. ¶ 12). Mrs. Harley is the former manager of CMSI and an employee of CMSI. (Id. ¶ 13). Mr. Wright is a CMSI employee and the managing member of Meddex. (Id. ¶ 14).

Both CMSI and Meddex "participate[] in the Medicare program and submit[] claims for reimbursement from the Medicare trust fund." (Id. ¶¶ 16–17). The Amended Complaint alleges that CMSI and Mr. Harley, "and later Wright and Meddex, with the assistance of" Mr. and Mrs. Harley, presented false claims to the Medicare program. (Id. at 1). The false claims allegedly "arise from fraudulent billing practices that led to the submission of false claims . . . , including claims for payment for surgical dressings and other items that were for a higher paying code than is allowed . . . and claims for items not provided to patients, specifically by billing for greater quantities of items than were provided to patients." (Id. at 1–2; see also id. ¶ 32).

Effective February 6, 2018, "the Centers for Medicare and Medicaid Services (CMS) placed CMSI under an administrative payment suspension to monitor the claims summitted to Medicare by CMSI." (Id. at 2; see also id. ¶ 83 (alleging that "[i]n February 2018, Medicare imposed a prepayment review on CMSI based upon CMSI's fraudulent billing")).

---

[2] The Background section of this Order is derived from the Amended Complaint, the allegations of which are accepted as true at this stage of the case.

3

Once the prepayment review was imposed, CMSI stopped submitting claims to Medicare. (Id. ¶ 84). The following month, on or around March 19, 2018, Mr. and Mrs. Harley transferred ownership of Meddex to Mr. Wright through ATH Investments, LLC, another company that they owned. (Id. ¶ 94). The ownership change was effective as of February 21, 2018. (Id.). Meddex submitted a document to Medicare signed by Mr. Harley, Mrs. Harley, and Mr. Wright confirming the change in ownership. (Id. ¶ 96).

After the February 21, 2018, change in the control of Meddex to Mr. Wright, payments that Meddex received from Medicare continued to go into an account managed by Mr. Harley under CMSI's name. (Id. ¶ 105). The Harleys allegedly transferred Meddex to Mr. Wright "[i]n order to illegally subvert" the suspension that had been imposed on CMSI. (Id. at 2). The Defendants allegedly "conspired to submit CMSI's claims for payment to Medicare through Meddex to avoid the payment suspension." (Id. ¶ 110). "Meddex . . . submitted over $950,000.00 worth of claims for payment from on or about February 6, 2018, through on or about May 11, 2018," (id. at 2), "result[ing] in over $480,000 in payments to Meddex by the United States," (id. ¶ 112).

The Amended Complaint asserts seven counts: two False Claims Act claims against Mr. Harley and CMSI (Counts I and II); a claim for "payment by mistake" against Mr. Harley and CMSI (Count III); an unjust enrichment claim against "Defendants" (Count IV); and three False Claims Act claims against "Defendants" (Counts V, VI, and VII). Count V alleges presentation of false claims in violation of 31 U.S.C. § 3729(a)(1)(A); Count VI alleges conspiracy to present false claims in violation of 31 U.S.C. § 3729(a)(1)(C); and Count VII alleges conspiracy to make false statements in violation of 31 U.S.C. § 3729(a)(1)(C).

## III. Discussion

### A. False Claims Act (Counts V, VI, and VII)

Mrs. Harley asserts in her motion to dismiss that the Amended Complaint "focus[es] exclusively on alleged conduct of Mr. Harley and Mr. Wright" and does not state a False Claims Act claim against her that can survive a Rule 12(b)(6) motion to dismiss or satisfy Rule 9(b)'s requirements as to her. (Doc. 83 at 2). The Court disagrees.

As Mrs. Harley acknowledges in her motion, the Amended Complaint "details the identity of the people who allegedly submitted claims for payment to Medicare on behalf of CMSI and Meddex," (Doc. 83 at 1–2); "describes the nature of at least some of the particular claims or categories of claims the Government alleges were false, some of the products for which CMSI's claims for reimbursement to Medicare were purportedly upcoded, the locations where the companies allegedly operated, the period over which such claims were purportedly submitted, and the manner in which the Government alleges the claims were falsified and transmitted to Medicare for payment," (id. at 2); and "sets forth the 'who, what, where, why, and how' of the purported fraudulent conduct" with regard to the other four Defendants, (id.). But Mrs. Harley contends that "the Government has alleged merely that Ms. Harley is Mr. Harley's wife, was employed by CMSI, and was a co-owner of the company that sold Meddex to Mr. Wright." (Id.).

The Amended Complaint sufficiently states False Claims Act claims against Mrs. Harley. As the Government notes in its Response, "[w]hile Mrs. Harley's role in the conspiracy was limited, it was a role nonetheless." (Doc. 95 at 3). The Court agrees that Mrs. Harley's role is sufficiently described in the Amended Complaint to survive the motion to dismiss. The Amended Complaint alleges that Mr. Wright and Meddex were able to present false claims to Medicare "with the assistance of" Mr. and Mrs. Harley. (Doc. 66 at

5

1). It further alleges that the Harleys transferred Meddex to Mr. Wright "[i]n order to illegally subvert" the suspension that CMS had placed on CMSI in early 2018. (Id. at 2). And the Amended Complaint describes the sale of Meddex by the Harleys to Wright soon after the CMSI suspension was imposed and includes a copy of a document signed by both Mr. and Mrs. Harley effectuating that sale. (Id. ¶¶ 94–96). After describing these and other events that were part of the alleged scheme, the Amended Complaint alleges that "[u]sing these efforts, Defendants conspired to submit CMSI's claims for payment to Medicare through Meddex to avoid the payment suspension that took effect as to CMSI on February 6, 2018." (Id. ¶ 110). Finally, the Amended Complaint alleges the requisite level of knowledge in each False Claims Act count, supported by the circumstances described in the Amended Complaint. (See id. ¶¶ 134, 140, & 146). In sum, the Amended Complaint plausibly states False Claims Act claims against Mrs. Harley under the applicable pleading standards.

The provisions of the False Claims Act, "considered together, indicate a purpose to reach any person who knowingly assisted in causing the government to pay claims which were grounded in fraud, without regard to whether that person had direct contractual relations with the government." United States ex rel. Doe v. DeGregorio, 510 F. Supp. 2d 877, 884 (M.D. Fla. 2007) (quoting United States ex rel. Marcus v. Hess, 317 U.S. 537, 544–45 (1943)). The Amended Complaint sufficiently alleges that Mrs. Harley knowingly assisted in the scheme it describes in detail. The United States will, of course, be put to its proof later in the case as to Mrs. Harley as well as all of the other Defendants, but the Amended Complaint contains sufficient detail and particularity to survive Mrs. Harley's motion to dismiss as to Counts V, VI, and VII.

## B. Unjust Enrichment (Count IV)

In its response to Mrs. Harley's motion, the United States asserts that the motion "does not address the United States' claim of unjust enrichment, so the Court should not consider it here." (Doc. 95 at 6 (citing Mot., Doc. 83, at 2 & 9)). This is incorrect, however. Mrs. Harley's motion does specifically challenge the unjust enrichment claim. (See Doc. 83 at 7 ("Finally, while the Government lumps Ms. Harley in with the other Defendants on its claim for unjust enrichment, there is not a single allegation in the entirety of the Operative Complaint alleging that Ms. Harley obtained even so much as a dime of government funds, much less by way of submission of false claims for payment to Medicare." (citations to Amended Complaint omitted))). And although the United States goes on to note that unjust enrichment need not be pleaded with particularity, (Doc. 95 at 6), the Amended Complaint fails to satisfy even the more lenient Rule 8 pleading standard that applies to this claim.

"The elements of a cause of action for unjust enrichment are: (1) plaintiff has conferred benefit on the defendant, who has knowledge thereof; (2) defendant voluntarily accepts and retains the benefit conferred; and (3) the circumstances are such that it would be inequitable for the defendant to retain the benefit without paying the value thereof to the plaintiff." Peoples Nat'l Bank of Commerce v. First Union Nat'l Bank of Fla., N.A., 667 So. 2d 876, 879 (Fla. 3d DCA 1996) (quoting Hillman Constr. Corp. v. Wainer, 636 So. 2d 576, 577 (Fla. 4th DCA 1994)). In its unjust enrichment claim, the United States alleges only that "[t]his is a claim for recovery of monies by which Defendants have been unjustly enriched," (Doc. 66 ¶ 128), and that "[b]y obtaining government funds to which they were not entitled, Defendants were unjustly enriched," (id. ¶ 129). Even under the Rule 8 standard, these assertions are at most a "recitation of the elements" of an unjust enrichment claim, which "will not do." Iqbal, 556 U.S. at 678 (quoting Twombly, 550 U.S.

7

at 555). There are no facts in this count or elsewhere in the Amended Complaint supporting the allegation that Mrs. Harley "obtain[ed] government funds." Thus, this count does not "contain sufficient factual matter . . . to 'state a claim [for unjust enrichment] that is plausible on its face'" as to Mrs. Harley. Id. (quoting Twombly, 550 U.S. at 570). This count thus will be dismissed without prejudice insofar as it is brought against Mrs. Harley.

IV. **Conclusion**

Accordingly, it is **ORDERED** as follows:

1. The Motion to Dismiss (Doc. 83) filed by Defendant Joan Harley is **GRANTED in part and DENIED in part**. The motion is **GRANTED** as to Count IV and is **DENIED** as to Counts V, VI, and VII.

2. Count IV of the Amended Complaint in Intervention (Doc. 66) is **DISMISSED without prejudice** insofar as it is brought against Defendant Joan Harley. If the United States wishes to replead this count, it may file a second amended complaint **on or before March 22, 2019**.

**DONE** and **ORDERED** in Orlando, Florida, on March 11th, 2019.

JOHN ANTOON II
United States District Judge

Copies furnished to:
Counsel of Record